UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Caitlin Favata</u>

    v.                                      Case No. 1:22-cv-00552-PB
                                              Opinion No. 2023 DNH 148

<u>Kilolo Kijakazi, Ph.D., P.S.W.
Acting Commissioner,
Social Security Administration</u>

## MEMORANDUM AND ORDER

Caitlin Favata challenges the Social Security Administration's denial of her application for disability insurance benefits under 42 U.S.C. § 405(g). She argues that the Administrative Law Judge (ALJ) failed to properly evaluate medical opinion evidence when determining Favata's residual functional capacity (RFC), which in turn affected her final determination as to Favata's disability status. The Commissioner seeks an order affirming the ALJ's decision. For the following reasons, I grant Favata's motion and deny the Commissioner's motion.

### I.    BACKGROUND

A.    Procedural Facts

Favata is a thirty-one-year-old woman who has completed some college classes and worked most recently as a delivery person for Instacart. Tr. 46. She applied for disability benefits under Title II of the Social Security Act in

December 2019, identifying numerous physical and mental ailments—a lower back tumor, fibromyalgia, juvenile rheumatoid arthritis, depression, anxiety disorder, panic disorder, carpal tunnel syndrome, early onset menopause, migraines, addiction disorder, and a lower back injury from a fall—that limit her ability to work. Tr. 74. She later amended her alleged disability onset date to January 2017, Tr. 13, and added an additional diagnosis of borderline personality disorder, Tr. 87-88.

Disability Determination Services (DDS) denied Favata's initial claim in March 2021, Tr. 74-86, and her request for reconsideration that June, Tr. 87-98. Favata then requested a hearing before an ALJ, which was held telephonically in November 2021. Tr. 38-72. After hearing testimony from Favata and a vocational expert (VE), the ALJ determined that Favata was not disabled and denied her claim. Tr. 31. The Appeals Council then denied her request for review in November, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1.

B.   Medical Evidence and ALJ Determination

The ALJ followed the typical "five-step sequential evaluation process" for determining whether an individual qualifies for disability benefits as required by 20 C.F.R. § 404.1520. At the first step, the ALJ concluded that Favata "ha[d] not engaged in substantial gainful activity since the amended alleged onset day of January 1, 2017." Tr. 15; see § 404.1520(a)(4)(i). At step

2

two, she determined that several of Favata's diagnoses—her lower back tumor, fibromyalgia, juvenile rheumatoid arthritis, depression, anxiety, personality disorder, migraines, and substance abuse—constituted "severe impairments" under 20 C.F.R. § 404.1520(c), while her carpal tunnel syndrome, obstructive sleep apnea, and early onset menopause did not. Tr. 16; see § 404.1520(a)(4)(ii).

At the third step, the ALJ concluded that Favata "[did] not have an impairment or combination of impairments that meets or medically equals the severity" of any of the impairments enumerated in the agency's regulations. Tr. 17; see § 404.1520(a)(4)(iii); 20 C.F.R., Part 404, Subpart P, Appendix 1. As a part of her analysis, the ALJ considered Favata's mental impairments and found that they only "moderate[ly] limit[ed]" her mental functioning in four enumerated areas, known as the "B" criteria: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting or maintaining pace"; and (4) "adapting or managing oneself." Tr. 18-19. Because these limitations were neither "marked" nor "extreme," the ALJ concluded that Favata's mental impairments did not meet or medically equal the disability listings for depressive, bipolar and related disorders; anxiety and obsessive-compulsive disorders; or personality and impulse-control disorders. Tr. 18-19; see 20 C.F.R., Part 404, Subpart P, Appendix 1, §§ 12.04, 12.06, 12.08.

3

The ALJ then proceeded to the fourth step of her analysis, which required her to determine whether Favata had the RFC to perform the requirements of her past relevant work. Tr. 29; see § 404.1520(a)(4)(iv). In determining Favata's RFC, the ALJ relied on Favata's own statements as well as medical opinion evidence, including, as relevant to this appeal, opinions by two state agency psychological consultants: Laura Landerman, Ph.D., who provided her opinion during Favata's initial claim before DDS, and Craig Stenslie, Ph.D. who was consulted during reconsideration of Favata's claim. Tr. 19-29.

Dr. Landerman assessed Favata's mental limitations both with respect to the B criteria, which are used only at steps two and three, and Favata's Mental Residual Functional Capacity (MRFC), which is used at steps four and five. See Tr. 78-79, 82. As to the B criteria, Dr. Landerman determined that Favata was moderately limited in all four criteria, including her ability to "understand, remember, or apply information." Tr. 78-79. Then, in determining Favata's MRFC, she concluded that Favata was not significantly limited in her ability to understand and remember "very short and simple instructions" but that she was moderately limited in her ability to understand and remember "detailed" instructions. Tr. 82. She then stated in the narrative portion of her MRFC report that Favata was "[a]ble to

4

understand[,] recall[,] and carry out short and simple instructions but not more detailed ones on a consistent basis." Tr. 82.

Dr. Stenslie agreed with Dr. Landerman that Favata was moderately limited in three of the four B criteria, but he concluded that she was only mildly limited in her ability to "[u]nderstand, remember, or apply information." Tr. 90. He also differed from Dr. Landerman in assessing Favata's MRFC, finding that Favata experienced no limitations in her understanding and remembering and was "able to manage all instructions." Tr. 94-95.

The ALJ discussed the findings of Dr. Landerman and Dr. Stenslie in a single paragraph of her decision. See Tr. 25-26. She began by stating that they agreed that Favata was moderately limited with respect to all four B criteria, though she later qualified that statement by noting that Dr. Stenslie had "changed the limitation in understanding, remembering, and applying information to mild with no limitations in understanding and remembering[.]" Tr. 25-26. Apparently tracking Dr. Landerman's narrative response on the MRFC form, the ALJ next noted, without attributing the statement to either Dr. Landerman or Dr. Stenslie, that Favata was "able to understand[,] recall[,] and carry out short and simple instructions but not more detailed ones on a consistent basis." Tr. 25. She then concluded, without addressing the inconsistencies between the two expert's MRFC opinions, that

5

"[t]he undersigned finds these prior administrative psychological opinions are persuasive, as they are consistent with the record as a whole." Tr. 26.

After considering all of the evidence in the record, the ALJ determined that Favata had the RFC to perform light work with certain limitations. Tr. 19. With respect to her MRFC, the ALJ concluded that Favata was "capable of understanding, remembering, and carrying out simple, routine tasks over a typical workday and work week in a setting with no fast paced or high production standards."[1] Tr. 19. The ALJ then used her RFC finding and testimony by the VE to determine that Favata could not perform her past relevant work, Tr. 29, and she proceeded to the fifth step of her analysis.

At step five, an ALJ must determine whether there are jobs in the national economy that the claimant can perform. § 404.1520(a)(4)(v). The ALJ addressed this issue by asking the VE whether such jobs existed for a claimant of Favata's age with the same education, work experience, and RFC. Tr. 69-70. The ALJ instructed the VE to assume a hypothetical claimant who was "capable of understanding, remembering, and carrying out simple[,] routine tasks over a typical workday and work week[.]" Tr. 70. Using these parameters, the VE testified that such an individual could work as (1) a

---

[1] Although it is not relevant to the current appeal, the ALJ also found that Favata was "limited to occasional, superficial interaction with public and coworkers, and routine interactions with supervisors. She can adapt to simple changes in routine." Tr. 19.

6

library page; (2) a merchandise marker; and (3) an office helper, each of which exist in the national economy in significant numbers. Tr. 70. In giving this answer, the VE noted that all three jobs are unskilled and only require the ability to do light physical work. Tr. 70. Each position also requires the ability to engage in "Level 2" reasoning.[2] Page, Dictionary of Occupational Title (DICOT) 249.687-014, 1991 WL 672351; Marker, DICOT 209.587-034, 1991 WL 671802; Office Helper, DICOT 239.567-010, 1991 WL 672232. The ALJ then adopted the VE's testimony and concluded that Favata was not disabled. Tr. 30-31.

## II.   STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. See 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the Commissioner's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence

---

[2]   Level 2 reasoning requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DICOT, Appendix C.

7

exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for her, not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (cleaned up).

### III.   ANALYSIS

Favata argues on appeal that the ALJ erred in failing to explain her decision to partially adopt Dr. Landerman's MRFC finding without crediting her determination that Favata could understand, remember, and carry out "short" instructions "but not more detailed ones on a consistent basis." Doc. 6-

8

1 at 7. The Commissioner argues in response that the ALJ was "not required to adopt every limitation . . . that she found persuasive, and substantial evidence supports her assessment of an RFC that did not include a restriction to 'short' instructions." Doc. 8 at 2. Additionally, the Commissioner alleges that, even if the ALJ erred by ignoring Dr. Landerman's opinion that Favata could only understand, remember, and carry out "short" instructions, the error was inconsequential because it did not "materially change the outcome." Id. I agree with Favata and find that the ALJ erred by omitting an essential part of Dr. Landerman's MRFC opinion from Favata's RFC without explanation or sufficient evidentiary support.

An ALJ is responsible for determining a claimant's RFC based on "all the relevant evidence" in the record. § 416.945(a)(1). This includes "medical opinions and prior administrative medical findings." § 404.1520c(b). When considering this evidence, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." § 404.1520c(a). She must instead evaluate the relative persuasiveness of the medical opinions and prior administrative medical findings based on their (1) "[s]upportability," (2) "[c]onsistency" with other record evidence, (3) "[r]elationship with the claimant," (4) "[s]pecialization" of the medical source, and (5) "[o]ther factors" that "tend to support or

9

contradict" the evidence, such as the source's "familiarity with the other evidence" in the record or "understanding" of relevant "policies and evidentiary requirements." § 404.1520c(b)-(c). However, she is generally only required to "explain how [she] considered the supportability and consistency factors." § 404.1520c(b)(2) (noting that an ALJ "may, but [is] not required to, explain how [she] considered" the remaining three factors).

An ALJ's RFC determination must also "provide a clear explanation for its evidentiary basis and reasons for rejecting medical source opinions." Hynes v. Barnhart, 379 F. Supp. 2d 220, 224 (D.N.H. 2004); see also Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) ("Moreover, the ALJ's finding of residual functional capacity must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'") (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)); Clifford v. Apfel, 227 F.3d 863, 874 (7th Cir. 2000) ("For meaningful appellate review, however, we must be able to trace the ALJ's path of reasoning."). And although "an ALJ is not required to 'reconcile explicitly every conflicting shred of medical testimony,'" she nonetheless "must explain why a medical opinion was not adopted if the RFC assessment conflicts with it." Kyle L.C. v. Comm'r of Soc. Sec., No. 21-CV-6097S, 2023 WL 1858079, at *5 (W.D.N.Y. Feb. 9, 2023) (quoting Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006)). Moreover, "[a]n ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may

not substitute his own judgement for competent medical opinion.'" Karen Beth L. v. Comm'r of Soc. Sec., 521 F. Supp. 3d 280, 285 (W.D.N.Y. 2021) (quoting Quinto v. Berryhill, No. 3:17-cv-00024, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)).

In the present case, I cannot determine whether the ALJ properly evaluated the expert evidence that bears on Favata's MRFC because the ALJ failed to sufficiently explain how she arrived at her RFC determination. Although Dr. Landerman and Dr. Stenslie substantially disagreed over Favata's limitations in her understanding and memory, the ALJ found both opinions credible without noting that they were in conflict with respect to Favata's MRFC.[3] The ALJ also failed to acknowledge the fact that she only partially adopted Dr. Landerman's MRFC findings, and she failed to cite to any countervailing expert opinion that could explain a decision to adopt some

---

[3] Although the ALJ did note that Dr. Landerman and Dr. Stenslie disagreed over how one of the four B criteria should be assessed, that disagreement was inconsequential to the ALJ's RFC determination because "the limitations identified in the 'paragraph B'. . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). The ALJ also noted Dr. Stenslie's conclusion that Favata experienced no limitations in understanding and remembering, but she discussed that finding when explaining the disagreement between the two experts over the B criteria, and she never acknowledged the fact that Dr. Stenslie's finding on that point was in conflict with Dr. Landerman's MRFC determination. See Tr. 26.

but not all of Dr. Landerman's opinion. Without such explanations, I am in no position to determine whether the ALJ's decision was grounded in sufficient evidence.[4]

The Commissioner is correct that the ALJ was "not required to explicitly adopt Dr. Landerman's recommendation" verbatim simply because the ALJ found her opinion persuasive. Doc. 8 at 6; see Dimambro v. U.S. Soc. Sec. Admin., 2018 DNH 004, 2018 WL 301090, at *4, 8 (D.N.H. Jan. 5, 2018) (explaining that an ALJ must "resolve[] conflicts in the evidence" but is not "'required to incorporate verbatim' those functional limitations he chooses to adopt") (quoting Windsor v. Berryhill, No. 15-cv-391, 2017 WL 1147465, at *4 (M.D. Ala. Mar. 27, 2017)). However, the ALJ was obligated to provide sufficient reasoning to allow a reviewing court to determine whether that decision is supported by substantial evidence. See Dumont v. Berryhill, No. 16-11502, 2017 WL 6559758, at *7 (D. Mass. Dec. 22, 2017) ("The ALJ may

---

[4] The Commissioner, while urging me to "find that substantial evidence supports [the ALJ's] decision," Doc. 8 at 5, fails to cite to any other medical evidence to bolster her argument. Upon review of the record, the ALJ found the opinion of Philip Robbins, Ph.D., a psychological consultative medical examiner, "generally persuasive." Tr. 26-27. However, Dr. Robbins merely reported that Favata's "comprehension skills were good" and that he "never needed to explain things further to her"; he did not opine on the specific length or level of complexity of instructions that Favata was able to understand. Tr. 710. As such, his opinion does not conflict with Dr. Landerman's mental RFC finding and does not constitute countervailing evidence to support the deviation.

12

have reasons for accepting certain limitations while rejecting others, but he is required to 'explain why he rejected some limitations contained in an RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment.'") (quoting Watkins v. Berryhill, No. 3:16-cv-30117, 2017 WL 4365158, at *11 (D. Mass. Sept. 29, 2017)). Here, without any insight as to why Dr. Landerman's finding that Favata could understand and remember only "short and simple instructions but not more detailed ones on a consistent basis" was omitted from the RFC determination, that task is not feasible.

    Notwithstanding the Commissioner's argument to the contrary, the ALJ's failure to explain why she did not fully adopt Dr. Landerman's MRFC opinion was not inconsequential. Because the ALJ asked the VE to assume that Favata was limited to "simple[,] routine tasks" but not also "short" tasks, he properly determined that Favata could perform Level 2 jobs. See, e.g., Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019) (finding no "inconsistency" between an RFC limited to "simple, routine repetitive tasks of unskilled work" and "Level 2's notions of 'detailed but uninvolved instructions'") (cleaned up). But had the ALJ instead followed Dr. Landerman's opinion in full and asked the VE to identify jobs that require the ability to understand and remember "short and simple" instructions, none of the jobs that the VE identified would qualify. See, e.g., id. ("'Short' is

13

inconsistent with 'detailed' because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include."); Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019) (finding that a "[conflict] exists" between a claimant's RFC, which was limited to "short, simple instructions[,] and the VE's testimony that [the claimant] could perform jobs that include detailed but uninvolved instructions"); Albra v. Acting Comm'r of Soc. Sec., 825 F. App'x 704, 708-09 (11th Cir. 2020) (concluding "there exists an apparent conflict" between the claimant's RFC limiting her to "short, simple instructions" and the level two jobs identified by the VE); Linwood C. v. Kijakazi, No. 1:22-cv-00013, 2022 WL 10337867, at *4 (D. Me. Oct. 18, 2022) ("The ALJ's RFC determination that Plaintiff is limited to tasks with 'short' instructions, therefore, is inconsistent or in conflict with the DOT Level 2 reasoning, which requires the ability to carry out 'detailed' (i.e., longer) instructions."). But see Ranstrom v. Colvin, 622 F. App'x 687, 688 (9th Cir. 2015) ("There is no appreciable difference between the ability to make simple decisions based on 'short, simple instructions' and the ability to use commonsense understanding to carry out 'detailed but uninvolved instructions,' which is what Reasoning Level 2 requires.") (cleaned up).

The significance of the ALJ's error is compounded by the fact that she also overlooked Dr. Landerman's finding that Favata could not understand, recall, or carry out "more detailed [instructions] on a consistent basis." Tr. 82.

Even if a person capable of understanding, remembering, and carrying out short, simple instructions can perform Level 2 jobs in certain circumstances, a person who cannot understand, remember, and carry out detailed instructions on a consistent basis is plainly unable to engage in Level 2 reasoning. Thus, the ALJ's failure to explain why she did not adopt Dr. Landerman's opinion in full was a serious error that may well have affected her determination that Favata was not disabled.

It is not for this court to try to guess as to whether the ALJ considered and reasonably discounted, mistakenly overlooked, or impermissibly ignored the medical evidence. Dumont, 2017 WL 6559758, at *8 ("This court is not entitled to speculate as to the reasons for the ALJ's apparent rejection of those limitations. The ALJ's failure to offer an explanation constitutes error warranting remand."); Dube v. Astrue, 781 F. Supp. 2d 27, 35 (D.N.H. 2011) ("Moreover, a court must be able to determine whether the ALJ considered the contrary evidence and chose to discredit it, or whether it was 'simply ignored.'") (quoting Lord v. Apfel, 114 F. Supp. 2d 3, 14 (D.N.H. 2000)). As such, the ALJ's failure to recognize or reconcile differences in the medical evidence or sufficiently explain or support her RFC determination with substantial evidence was an error, and remand is necessary. See Seavey v. Barnhart, 276 F.3d 1, 12 (1st Cir. 2001) ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation

15

for its action, the reviewing court ordinarily should remand the case to the agency.").

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion to affirm (Doc. 8) is denied. Favata's motion to reverse (Doc. 6) is granted, the ALJ's decision is vacated, and the case is remanded to the Commissioner for further proceedings consistent with this opinion. The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

December 5, 2023

cc: Counsel of Record